1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ACKERMANN & TILAJEF, P.C.**
CRAIG J. ACKERMANN (State Bar No. 229832)
cja@laborgators.com
PABLO OROZCO (State Bar No. 274267)
orozco@laborgators.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635

**WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.**
MELISSA M. HARNETT (State Bar No. 164309)
mharnett@wccelaw.com
JESSE B. LEVIN (State Bar No. 268047)
jlevin@wccelaw.com
5567 Reseda Blvd., Suite 330
Post Office Box 7033
Tarzana, CA 91357-7033
Telephone: (818) 705-6800
Facsimile: (818) 996-8266

**ATTORNEYS FOR PLAINTIFF PAUL WOOD**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL WOOD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE MARTIN-BROWER COMPANY, L.L.C.<br><br>Defendant. | Case No.  3:10-cv-03289-SI<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:   Hon. Susan Illston<br>Complaint Filed:  June 23, 2010<br>Hearing Date: March 25, 2011 |

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

1  **NOTICE IS HEREBY GIVEN** that, on March 25, 2011, at 9:00 a.m. or as soon thereafter

2  as the matter may be heard, in Courtroom 10 of the United States District Court for the Northern

3  District of California before the Honorable Judge Susan Illston, pursuant to Fed. R. Civ. P. 23(e),

4  Plaintiff Paul Wood, on behalf of himself and all others similarly situated, will and does hereby

5  move this Court for entry of the Proposed Order filed herewith:

6       1.     Preliminarily certifying the Class for purposes of settlement only;

7       2.     Preliminarily appointing Plaintiff as Class Representative for purposes of settlement;

8       3.     Preliminarily appointing Craig J. Ackermann, Esq. of Ackermann & Tilajef, P.C. and

9             Melissa M. Harnett, Esq. of Wasserman, Comden, Casselman & Esensten, L.L.P. as

10             Class Counsel for purposes of settlement;

11       4.     Preliminarily approving the settlement as fair, adequate, and reasonable, based upon

12             the terms set forth in the parties' Stipulation Regarding Settlement of Class Action,

13             including payment by The Martin-Brower Company, L.L.C.  of the Total Settlement

14             Sum of $685,000, plus the employer's share of payroll taxes arising from such

15             payments and the reimbursement of the part of the mediation fee previously paid by

16             Class Counsel  ($3,720);

17       5.     Preliminarily approving the Enhancement Award of $12,000 to Plaintiff in

18             recognition of his service to the class and the risks that he undertook in filing the

19             Lawsuit;

20       6.     Preliminarily approving Class Counsel's request for up to 25% of the Total

21             Settlement Sum as attorneys' fees, plus reimbursement of litigation costs not

22             exceeding $10,000;

23       7.     Appointing a Claims Administrator, to be agreed upon prior to the hearing on this

24             Motion, as the third-party administrator for mailing notices and for claims

25             administration, and approving that the fees and costs of the claims administration

26             process, estimated to be no more than $10,000, be deducted from the Total

27             Settlement Sum; and

28       8.     Approving the proposed Class Notice and ordering that it be disseminated to the

**ACKERMANN & TILAJEF, P.C.**
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

1  Class as provided in the Stipulation Regarding Settlement of Class Action.

2  Dated:  March 4, 2011                    Respectfully submitted,

3                                           ACKERMANN & TILAJEF, P.C.

4

5                                           By: _____
                                                Craig J. Ackermann, Esq.
6                                               Pablo Orozco, Esq.

7

8                                           WASSERMAN, COMDEN,
                                            CASSELMAN & ESENSTEN, L.L.P.
9

10                                          By: _____
                                                Melissa M. Harnett, Esq.
11

12                                          Attorneys for Plaintiff and the
                                            Class
13

14

15

16                    .

17

18

19

20

21

22

23

24

25

26

27

28

ACKERMANN & TILAJEF, P.C.
11380 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

3:10-cv-03289-SI

1

**TABLE OF CONTENTS**

2

3

I.      INTRODUCTION ............................................................................. 1

II.     FACTUAL SUMMARY .................................................................... 1

        A.      Background....................................................................... 1

        B.      Marshalling of Evidence.................................................... 3

        C.      Settlement Negotiations..................................................... 4

        D.      Terms of the Settlement.................................................... 7

III.    RULE 23 CLASS CERTIFICATION REQUIREMENTS ARE MET ............. 9

        A.      The Class Of 116 Far Exceeds Numerosity Requirements ............ 9

        B.      Common Questions of Fact and Law Exist Because Plaintiff And The
                Class Are Subject To Uniform, Class-Wide Policies That Create Shared
                Factual And Legal Issues.................................................... 9

        C.      Plaintiff's Claims are Typical of those of the Class Because Plaintiff's
                Claims Are Reasonably Coextensive with those of the Class................ 10

        D.      Plaintiff and Class Counsel Are Adequate Because They Have No
                Conflict Of Interests And Are Ready To Vigorously Prosecute This
                Action ........................................................................... 10

        E.      The Requirements of Rule 23(b)(3) Are Also Satisfied................ 11

                i.      Predominance Is Met As To Plaintiffs Claims Because They
                        Arise From Defendant's Uniform Class-Wide Policies and
                        Practices............................................................... 12

                ii.     Superiority Is Satisfied Because Adjudicating Claims As A Class
                        Fosters Judicial Efficiency And Allows For Redress Of Small
                        Individual Claims ................................................... 14

IV.     PROPOSED SETTLEMENT MERITS APPROVAL ............................ 15

        A.      The Settlement Agreement Is Within The Range Of Possible Approval....... 15

        B.      The Settlement Is The Product of Serious, Informed & Non-Collusive
                Bargaining....................................................................... 17

        C.      The Settlement Agreement Contains No Obvious Deficiencies .................. 18

                i.      The Settlement Agreement Does Not Grant Preferential

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Treatment To Segments of the Class.................................................. 18

    ii.    The Settlement Agreement Does Not Grant Preferential
Treatment To The Class Representative ........................................... 18

    iii.    The Attorneys' Fees Under the Settlement Agreement Are
Reasonable........................................................................................ 19

**V.**    **APPROVAL OF CLASS NOTICE AND RELATED FORMS ........................ 20**

    A.    Administration of Notice and Objections...................................... 20

    B.    The Court Should Direct Distribution of the Notice of Settlement............... 21

    C.    The Proposed Class Notice and Opt-out Process Are Appropriate............... 21

    D.    The Court Should Set A Final Approval Hearing ......................................... 22

**VI.**    **CONCLUSION ...................................................................................................... 22**

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

Cases

*Amchem Prods. v. Windsor,* 521 U.S. 591 (1997) ................................................. 11

Amchem Prods. v. Windsor, 521 U.S. 591, 620 (1997) ..................................... 11

*Bartender Trust Fund v. La Vegas Sands, Inc,* 244 F.3d 1152 (9th Cir. 2001) ................. 10

*Bibo v. Federal Express, Inc., et al,* 2009 WL 1068880 (N.D.Cal.) ............................. 5, 12

*Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D.Cal. 2007) ..................................... 4

*Bond, et al. v. Ferguson Enterprises*, USDC Case No. CV 09-0166 (ED. Cal. 2009) ....... 16

*Bonilla v. Starwood Hotels & Resorts Worldwide, Inc.*, 407 F. Supp. 2d 1107 (C.D. Cal. 2005) ......................................................................................................... 5

*Brewer v. Premier Golf Properties*, 168 Cal.App.4th 1243 (2008) ..................................... 13

*Brinker Restaurant Corp. v. Superior Court*, 165 Cal.App.4th 25 (2008) ......................... 16

*Brinkley v. Public Storage*, 167 Cal.App.4th 1278 (2008) ................................................. 11

*Bufil v. Dollar Financial Group*, 162 Cal. App.4th 1193 (2008) ....................................... 11

*Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998) ....................................................................................... 5

*Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th, 949 (2005). ..................................... 11

*Corder v. Houston's Rests., Inc.*, 424 F. Supp. 2d 1205 (C.D. Cal. 2006) ........................... 6

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) ................................................... 20

*Elliott v. Spherion Pac. Work, LLC*, 572 F.Supp.2d 1169 (C.D.Cal. 2008) ....................... 13

*Espinoza v. Domino's Pizza, LLC*, 2009 WL 882845 (C.D.Cal.2009) ............................... 12

*Fitz-Gerald v. Skywest Airlines, Inc.,* 155 Cal.App. 4th 411 (Cal. Ct. App. 2007) ............... 5

*General Tel Co. v. Falcon*, 457 U.S.147, 157-8, n. 13 (1982) ........................................... 10

*Gentry v. Superior Court,* 42 Cal.4th 443 (2007) .............................................................. 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), ........................................... 8, 13

*Hernandez v. Chipotle Mexican Grill, Inc.* 2010 WL 3789012 (September 30, 2010) ...... 11

*In Re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ..................................... 19

*In re Tableware Antitrust Litigation,* 484 F.Supp.2d 1078 (N.D.Cal.2007) ..................... 14

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

*Iniguez v. Evergreen Aviation Ground Logistics Center, Inc., et al.*, 07-cv-7184 AHM (VBKx) ............................................................................................................................ 5

*Jape, et al. v. Southern Wine & Spirits*, USDC Case No. CV 09-2599 (CD.Cal. 2009) .... 16

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982) ......................................... 8

*Marlo v. United Parcel Service, Inc.*, 2009 WL 1258491(C.D. Cal. May 5, 2009) ............ 6

*Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980) .................... 21

*Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094 (2007) ................................ 13

*Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361(2009) ................................... 11, 12, 13

*Padilla et al., v. Young's Market Company, L.L.C.*, CV 09-8730 (C.D. Cal 2010)...... 16, 18

*Paul, Johnson, et al. v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) .................................. 18

*Reynoso v. Stock Building*, USDC Case No. CV 08-2578 (CD.Cal. 2008) ....................... 16

*Ross, et al. v. U.S. Bank Nat. Ass'n.*, 2010 WL 3833922 (N.D.Cal. 2010) ........................ 19

*Satchell, et al. v. Fedex* 2007 WL 2343904 (N.D.Cal. 2007) ............................................. 19

*Staton v. Boeing Co.*, 327 F.3d 938, 976-7 (9th Cir. 1993) ................................................ 17

*Tierno v. Rite Aid Corp*, 2006 WL 2535056 (N.D.Cal 2006) ............................................ 14

*Trujillo v. Winco Foods, LLC*, Case No. 622364, Cal. Superior Ct., County of Stanislaus (January 1, 2009) ............................................................................................................. 13

*U.S. v. Truckee-Carson Irrigation Dist.*, 71 F.R.D. 10, 18 (D. Nev. 1975) ....................... 20

*United Parcel Service, Inc. v. Superior Court*, 2011 WL 523633 (Cal.App. 2 Dist.) .......... 6

*Valles v. Ivy Hill Corporation*, 410 F.3d 1071 (9th Cir. 2005) ............................................. 5

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2003) .............................. 18

*Wiegle v. FedEx Ground Package Sys, Inc.*, 2008 W.L. 410691 (S.D.Cal. 2008) ............. 14

*Wylie v. Foss Maritime Co.*, 2008 WL 4104304 ................................................................... 5


<u>Statutes</u>

28 U.S.C. §1331 ...................................................................................................................... 2

29 U.S.C. §185(a) .................................................................................................................. 4

49 U.S.C. §14051(c)(1) .......................................................................................................... 4

Cal. Business & Professions Code, §17200, et seq. .............................................................. 2

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

Cal. Labor Code §§2698-9 ............................................................................... 2

Cal. Labor Code §1194 ................................................................................... 2

Cal. Labor Code §1197 ................................................................................... 2

Cal. Labor Code §203 ..................................................................................... 9

Cal. Labor Code §218.5 ................................................................................ 18

Cal. Labor Code §226 ............................................................................. 2, 13

Cal. Labor Code §512 ......................................................................... 2, 9, 12

Cal. Rules of Court 8.1105(e) ...................................................................... 12

<u>Other Authorities</u>

I.W.C. Wage Order No. 7 ................................................................... 2, 6, 9, 13

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

**ACKERMANN & TILAJEF, P.C.**
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

## I.  INTRODUCTION

On behalf of himself and the proposed Class (the "Class"),[1] Plaintiff Paul Wood ("Plaintiff") requests that this Court preliminarily approve the proposed Stipulation Regarding Settlement of Class Action (the "Settlement Agreement") entered into by him and Defendant The Martin-Brower Company, L.L.C. ("Defendant" or "Martin-Brower"). The Settlement Agreement seeks to fully release and discharge Defendant from the claims brought against it by Plaintiff in the above-captioned matter (the "Lawsuit") in exchange for paying $685,000 ("Total Settlement Sum" or "TSS"), plus the employer's share of payroll taxes, and additionally reimbursing Class Counsel's previously-paid portion of the mediation fee ($3,720).

The Settlement Agreement is the product of non-collusive negotiations by informed parties and their counsel. The settlement is fair, reasonable and adequate to all. Accordingly, Plaintiff seeks: (1) preliminary approval of the Settlement Agreement; (2) provisional certification of the Class for settlement purposes only; (3) appointment of Plaintiff as Class Representative; (4) appointment of Ackermann & Tilajef, P.C. ("A&T") and Wasserman, Comden, Casselman & Esensten, L.L.P. ("WCCE") as Class Counsel; (5) approval of the parties' proposed form and method of notifying Class Members of the Settlement Agreement; (6) an order scheduling the hearing date for Final Approval of the Class Settlement Agreement; and (7) entry of a preliminary approval Order.[2]

## II.  FACTUAL SUMMARY

### A.  Background

On or around June 23, 2010 Plaintiff Paul Wood filed his Original Class Action Complaint (the "Original Complaint") in the Superior Court of California, Alameda County, on behalf of himself and all others similarly situated. In it, Plaintiff alleged that Defendant's company-wide policy of scheduling overly-demanding delivery routes had typically impeded him and the Class from taking half-hour, off-duty meal breaks on or before the fifth, or the sixth, hour of their shifts.

---

[1] The Class is defined in Plaintiff's Operative Complaint as: all truck drivers employed by The Martin-Brower Company, L.L.C.  in California, whose job responsibilities included delivering or moving food or beverage products in California by driving on the road during the period June 23, 2006 through the date of preliminary approval (the "Class Period"). The Class includes 116 current and former drivers employed by Defendant ("Class Members"), who have previously been identified.
[2] Reserving all of its defenses if the settlement is not approved, Defendant does not oppose this motion.

The Original Complaint also set forth a cause of action arising out of Defendant's company-wide policy of treating rest breaks as unpaid. Plaintiff further alleged that Defendant failed to compensate him and the Class with premium pay for any missed, untimely or on-duty meal breaks and any missed or unpaid rest breaks. Plaintiff further asserted that these company-wide practices entitle him and the Class to pecuniary damages pursuant to California Labor Code §§226.7, 512, 1194, and 1197 and the Industrial Wage Commission's (IWC) Wage Order No. 7. Finally, Plaintiff's Original Complaint also put forth two causes of action derived from the aforementioned conduct. First, it delineated a claim for statutory penalties on the basis of Defendant's issuance of inaccurate paystubs in violation of Labor Code §226. Second, it asserted that Defendant engaged in unfair business conduct in violation of the Business and Professions Code, §17200, *et seq.*[3]

On or around July 27, 2010 Defendant removed the Lawsuit to federal district court, asserting that at least one of Plaintiff's claims was preempted under Labor Management Relations Act ("LMRA") thus giving this Court subject matter jurisdiction under 28 U.S.C. §1331. Specifically, Defendant averred among other things that Plaintiff's claim that it had failed to provide paid rest breaks was grounded in, and its adjudication thus required, interpretation of the Collective Bargaining Agreement ("CBA") entered into between Defendant and the Union representing its drivers.

Subsequently, on or around August 3, 2010, Defendant filed its Answer to Plaintiff's Original Complaint. On or around September 15, 2010 Plaintiff filed its First Amended Class Action Complaint ("Operative Complaint"), pursuant to a Joint Stipulation to Allow Plaintiff to File His First Amended Complaint. In the Operative Complaint, Plaintiff added an additional cause of action under the Private Attorney General Act, Labor Code §§2698, 2699 ("PAGA"), and agreed with Defendant that this Court had jurisdiction over the Lawsuit, but claimed that jurisdiction was properly grounded on the Class Action Fairness Act of 2005 ("CAFA").  Defendant filed its Answer to Plaintiff's Operative Complaint on or around October 4, 2010, denying all material allegations

---

[3] For the purposes of settlement alone, the parties have agreed to include an additional claim for waiting time penalties for those Class Members who are no longer employed by Defendant under Labor Code §203. *See*, Sections II(C)&(D), *infra*. *See*, Ackermann Decl., ¶36 and Settlement Agreement, attached thereto as **Exhibit 2**.

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

and asserting various affirmative defenses.

On January 25, 2010, the parties attended a mediation with experienced employment law mediator Eugene Moscovitch ("Moscovitch"). At the end of a long day of challenging negotiations, the parties reached the agreement described more fully below. On or around February 3, 2011, the parties filed a Notice of Settlement and Joint Stipulation requesting this Court to set a hearing date for preliminary approval, shorten the notice period for this motion and vacate all subsequent dates and deadlines. On or around February 7, this Court granted the parties' Joint Stipulation.

**B.    Marshalling of Evidence**

Following their Rule 26(f) conference, the parties opted to engage in informal discovery and early mediation in the hopes of resolving this matter in the most effective and efficient manner possible. Prior to mediation, the parties engaged in a substantial amount of informal discovery. Indeed, in the months between the filing of the Original Complaint and the January 25, 2011 mediation, Class Counsel undertook a meticulous and comprehensive review of all the information amassed during informal discovery, which included, *inter alia*: (1) careful analysis of hundreds of documents produced by Defendant, including XATANET Driver Log Daily Reports, Driver Manifests and payroll records for over 10% of the Class; (2) analysis of Defendant's internal documents and policies setting forth its scheduling, payroll, and rest period practices and policies; (3) obtaining detailed sworn declarations from 30 drivers (i.e., over 25% of the Class) in support of Plaintiff's case;[4] (4) analysis of Defendant's legal arguments, including the strength of its Federal Aviation Administration Authorization Act ("FAAA") and LMRA preemption arguments; and (5) research of the applicable law with respect to Plaintiff's claims and Defendant's defenses.

Plaintiff and Class Counsel have pointed out that during the period of informal discovery they secured sworn declarations from approximately 30 drivers. The 30 declarations, representing over 25% of the Class, support Plaintiff's claims in that they uniformly state that drivers were subject to significant time pressures that impeded them from taking adequate meal breaks in a timely fashion, if at all. In response, however, Defendant has secured 21 declarations that support its

---

[4] For its part, Defendant gathered 21 declarations from drivers supporting its case.  Thus, the parties each obtained conflicting declarations for a significant percentage of the Class.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PRELIMINARY APPROVAL
3

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

contention that drivers had ample time to take their meal periods in a timely fashion in accordance with California law and/or skipped breaks voluntarily. While Plaintiff's declarations emphasize the fact that Defendant scheduled each delivery too close to the next to allow sufficient time for a 30-minute, off-duty meal break before the first 5 or 6 hours of the shift, Defendant's declarations emphasize that there was no time-pressure exerted on drivers as a result of the scheduling because drivers were never reprimanded for arriving late at a stop. As a rebuttal, Plaintiff and Class Counsel have averred that the documents produced by Defendant corroborate Plaintiff's declarations insofar as they demonstrate an absence of logged meal periods, significant time pressures, and a generalize company-policy of prioritizing efficiency and timely delivery.  Defendant has responded that the documents support its position because they reflect ample opportunities for drivers to take breaks, and although the use of the official "break" code is rare, that is to be expected given that its drivers routinely code their breaks as some form of paid time, consistent with Company policy to provide paid rather than unpaid meal periods.

In preparation for mediation, Class Counsel also conducted a thorough analysis of class-wide violation rates and damages for Plaintiff's meal break claims on the basis of records received for a random sample of 12 members of the Class (the "Sample").[5]  After spending more than 75 hours reviewing and analyzing the data, Plaintiff concluded that the documentary evidence strongly supported his theory of the case and the declarations he had obtained from class members. Defendant, having conducted its own analysis, took the position that the documents were entirely consistent with its defenses and declarations, and that the records did not suffice on their own to prove Plaintiff's claims.  The clashing evidence, facts and conclusions support the parties' settlement.

### C.    Settlement Negotiations

The parties attended an all-day mediation session with Moscovitch on January 25, 2011. In

---

[5] The Sample was chosen as follows:  the first 12 Class Members, arranged in alphabetical order by last name, who also worked for Defendant for the entire Class Period. Records for each of the 12 members in the Sample covered one entire month of the Class Period. Records for the first driver in the Sample came from the second month in the Class Period, those for the second driver from the sixth month and so on at an interval of four months between the records of each driver. This method of selection was designed to obtain a random and roughly representative cross-section of the Class. Ackermann Decl. ¶23, **Exhibit F** thereto attached.

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

addition to Paul Wood, attorneys Craig J. Ackermann and Pablo Orozco, of A&T, and Melissa M. Harnett and Jesse Levin, of WCCE, attended on Plaintiff's behalf.  Class Counsel also hired employment class action veteran attorney Barry Goldstein to serve as a consultant for the Class and to attend mediation.[6] Attorney Katherine Forster, of Munger, Tolles & Olson, LLP and Jeff Carlsen, Vice President of Human Resources for Reyes Holdings, which is Martin-Brower's parent company, attended on behalf of Defendant.

In this case, Defendant has argued that Plaintiff must significantly discount the value of the Plaintiff's claims in light of the strength of its FAAAA[7] and LMRA[8] preemption defenses. Specifically, Defendant has suggested that its LMRA preemption defense is quite strong, since Plaintiff quoted language from the CBA agreement in support of his claim that Defendant did not authorize paid, Labor Code-complaint rest breaks. Defendant's preemption arguments admittedly warrant a discount because an adverse ruling on either defense would result in a dispositive and preclusive judgment and would expose Plaintiff to the possibility of paying Defendant its attorneys' fees. While recognizing the risks in litigating these issues, Plaintiff believes he can defeat the two defenses. As to the LMRA preemption defense specifically, Plaintiff has argued that citing CBA language as evidentiary support of a claim is not equivalent to a claim arising out of the policies set forth in the CBA. *See*, *e.g.*, *Valles v. Ivy Hill Corporation*, 410 F.3d 1071 (9th Cir. 2005); *Bonilla v. Starwood Hotels & Resorts Worldwide, Inc.*, 407 F. Supp. 2d 1107, 1112 (C.D. Cal. 2005); and *Wylie v. Foss Maritime Co.*, 2008 WL 4104304. Moreover, Plaintiff has defeated summary judgment

---

[6] For a detailed discussion of Mr. Goldstein's impressive experience for over 30 years as an employment class action attorney, *see*, Ackermann Decl. ¶ 12, **Exhibits D** & **E** (including a decision from a federal judge referring to Mr. Goldstein as "the nation's most accomplished employment discrimination class action lawyer."), attached thereto.

[7] The preemption provision of the FAAAA expressly forbids a state from enacting or enforcing laws "related to a price, route, or service of any motor carrier…" 49 U.S.C. §14051(c)(1). At least one federal court has held that the FAAAA preempts California meal and rest break laws. *See*, *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D.Cal. 2007).

[8] Section 301 of the LMRA vests jurisdiction in federal courts over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. §185(a). Although the text contains only a jurisdictional grant, the Supreme Court has interpreted it to compel the complete preemption of state law claims brought to enforce collective bargaining agreements. *See Valles*, 410 F.3d 1071,  1705 (9th Cir. 2005) . The Supreme Court has also held §301's preemptive scope to include cases the resolution of which "is substantially dependent upon analysis of the terms of CBA. *Id*.

on the basis of LMRA and FAAAA preemption in two other trucker meal break cases.[9]

The parties have also disagreed about the significance of the evidence gathered. First, Plaintiff and Class Counsel have placed great emphasis on the fact that they secured sworn declarations from 30 drivers indicating that drivers were impeded from taking timely meal breaks. Defendant has countered that that it secured approximately 21 sworn declarations supporting its contention that drivers were able to take meal breaks in compliance with California law or skipped them voluntarily. Plaintiff has argued that the declarations secured by himself and Class Counsel were corroborated by the XATANET driver logs and payroll records produced in that they both appeared to show high violation rates. As rebuttal, Defendant has argued that Plaintiff's estimation of the violation rates was far too high in that they did not give sufficient weight to the many alleged occasions in which drivers had taken a Labor Code-complaint meal break, but had failed to log it as such, using another code instead as was many drivers' practice. Defendant has also averred that, as stated in the declarations it obtained, many drivers had time to take meal breaks in accordance with California law but simply preferred not to.

A third point of contention between the parties has been the likelihood of prevailing on class certification. Plaintiff has pointed out that many federal courts have certified trucker meal break classes, and Defendant has argued that some found that individualized issues predominate. *Compare Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361 (2009); *Espinoza v. Domino's Pizza, LLC*, 2009 WL 882845 (C.D.Cal.); and *Bibo v. Federal Express, Inc., et al*, 2009 WL 1068880 (N.D.Cal.) (all granting class certification), *with Brown v. Federal Express*, 249 F.R.D. 580 (C.D.Cal. 2008) and *Jasper v. C.R. England, Inc., et al.,* 2009 WL 873360 (C.D.Cal.) (denying class certification).

A fourth point of contention has been Plaintiff's damages analysis. Defendant has argued that Plaintiff and Class Counsel overestimated the total number of days that Class Members actively worked as drivers ("Qualified Work Days" or "QWDs") during the Class Period because, among other factors, drivers only worked a 4-day work week. Plaintiff revised his damages' analysis to

---

[9] Ackermann Decl. ¶ 30. Federal and state courts have rejected the argument that the FAAAA preempts meal and rest breaks laws. *See, e.g., Californians for Safe and Competitive Dump Truck Transportation v. Mendonca,* 152 F.3d 1184 (9th Cir. 1998); *Iniguez v. Evergreen Aviation Ground Logistics Center, Inc., et al.,* 07-cv-7184 AHM (VBKx); and *Fitz-Gerald v. Skywest Airlines, Inc.,* 155 Cal.App. 4th 411 (Cal. Ct. App. 2007).

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

reflect the actual number of QWDs in the Class Period.

The fifth dispute between the parties has been the value of the rest break claim asserted by Plaintiff.[10] Defendant has pointed out that courts are generally less likely to certify rest break claims than they are meal break claims because the absence of a recording requirement under IWC Wage Order 7 §7(A)(3) makes it more difficult to show by means of uniform evidence applicable to all Class Members that drivers were unable to take adequate rest breaks. Plaintiff has argued in response that the his rest break claim was still amenable to certification, since there was documentary evidence that Martin-Brower had a uniform policy of treating rest breaks as unpaid time.[11] Defendant has countered that this theory supports LMRA preemption and that its interpretation of the policy is both different and consistent with California law.

Concerning Plaintiff's inaccurate wage statement claim, Defendant has argued there was no "injury" associated with the allegedly inaccurate wage statements. Plaintiff, on the other hand, has argued that Defendant's failure to include rest breaks as paid time or missed meal break payments caused a cascading violation of Labor Code §226.

Bearing in mind this expostulation, each party took turns reassessing their estimated value of the Lawsuit.  At the end of the day, through slow progress and guided by the mediator's expertise, the parties came to an agreement, the terms of which are further described in the following section.

### D.    Terms of the Settlement

Under the terms of the Settlement Agreement, Defendant is discharged of all claims asserted

---

[10] The mediation occurred on January 25, 2011, a little less than one month before the California Court of Appeals (Second District) held in *United Parcel Service, Inc. v. Superior Court*, --- Cal.Rptr.3rd---, 2011 WL 523633 (Cal.App. 2 Dist.), that Labor Code §226.7 permits up to two premium payments per work day, one for a missed or untimely meal period and the other for a missed, untimely or unpaid rest period. At the time of the mediation, there was a split in authority as to the maximum penalties allowable under §226.7 of the California Labor Code. While *Marlo v. United Parcel Service, Inc.*, 2009 WL 1258491, at *6-7 (C.D. Cal. May 5, 2009) held that one hour of pay was due both for rest break and meal break violations, even when those violations occurred on the same work day, the court in *Corder v. Houston's Rests., Inc.*, 424 F. Supp. 2d 1205, 1207 (C.D. Cal. 2006), had determined that "the plain wording of [§226.7] is clear that an employer is liable per work day, rather than per break not provided."

[11] Defendant's rest break policy provides in part that "any driver whose workday is scheduled to be more than eleven hours in duration may be scheduled up to a total of one hour per day <u>without pay</u> for meal and rest periods…In the event no meal and/or rest periods are so assigned by [Defendant], the driver may take up to one hour per day <u>without pay</u> for meal and/or rest periods at a time so as not to interfere with their delivery or return schedule" (emphasis added). Ackermann Decl. ¶ 24, **Exhibit H**, thereto attached.

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

in the Lawsuit ("Released Claims")[12] in exchange for paying the TSS of $685,000, plus the employer's share of payroll taxes arising from such payments and the portion of the mediation fee already paid by Class Counsel ($3,720). If this Court so approves, a total Enhancement Award of $12,000 will be deducted from the TSS and awarded to Plaintiff. Costs for Claims Administration will be deducted from the TSS as well. The Parties anticipate that the costs associated with claims administration should not exceed $10,000.  A payment of $2,500 to the California Workforce Development Agency shall also be deducted. The Settlement Agreement permits, and Class Counsel will apply for, an award of attorneys' fees not in excess of 25% of the TSS, plus litigation costs, up to $10,000.

After these deductions, the balance of the TSS, approximately $479,250 (the "Net Settlement Consideration" or "NSC") will be distributed to Participants.[13] The amount to be distributed to each Participant will be determined on the basis of QWDs by each Participant during the Class Period. Each day will be allocated a certain amount of money, calculated by dividing the NSC by the total number of QWDs within the Class Period for all Class Members.[14] Moreover, the Settlement

[12] The Released Claims include: any and all claims, whether known or unknown, demands, rights, liabilities and causes of action of every nature and description whatsoever including, without limitation, statutory, constitutional, contractual or common law claims, whether known or unknown, whether or not concealed or hidden, against the Martin-Brower Releasees, or any of them, as asserted in the operative complaint or arising out of facts alleged in the operative complaint, including without limitation claims arising under federal and/or state wage and hour laws that relate to the provision of meal periods, rest breaks, wage statements, recordkeeping and/or the timely payment of wages, including any such claim under contract, any collective bargaining agreement, the Fair Labor Standards Act, the California Labor Code, including but not limited to Labor Code section 203, the California Industrial Wage Orders, and the California Business and Professions Code, and any and all associated claims for penalties, liquidated and/or punitive damages and any and all associated claims for interest, costs, attorney fees, equitable relief or other types of available recovery. As to the Class Representative, Paul Wood, the Released Claims also includes a general release of all claims under state or federal law, in tort, common law or contract, whether pleaded in the Complaint or not, except Workers' Compensation claims.

[13] A Participant is any member of the Class who does not request exclusion from the Class (i.e. who does not "opt-out" after receiving notice and opportunity to do so), and will thus become bound by and when this Court grants Final Approval and enters the corresponding judgment.

[14] The total number of Qualified Work Days by which the NSC will be divided is based on the number of QWDs performed by all Class Members, not just the Participants to this settlement.  If for any reason the parties discover that the number of Participants exceeds 128 individuals (i.e. 10% more than the 116 Class Members Defendant has already identified), Defendant will add further monies to the NSC in an amount equal to the total sum of the equivalent pro-rata share of each additional Participant. If only an additional 11 or fewer Participants over the 116 previously identified (i.e. less than 10% of the 116

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

Agreement permits Participants to challenge the calculation of number of QWDs performed, and provides a resolution process for those disputes.

Each Participant will receive the amount due him or her under the terms set forth in the Settlement Agreement, without the necessity of having to undertake any other action or file any other document with the Claims Administrator. If a Class Member submits a written request in conformity with the terms of the Settlement Agreement to be excluded from the Lawsuit, then said Class Member will not be deemed a Participant and will neither receive the benefits due him or her under the Settlement Agreement nor be bound by it. The corresponding portion of the NSC allocated to each Class Member who properly opts out will be paid to Ronald McDonald House Charities.

For tax purposes, the Settlement Agreement provides that 1/3 of each Participant's award will be deemed wages, and the remaining 2/3 will be deemed interest and penalties. Defendant will additionally pay the employer's share of payroll taxes arising from awards to the Class.

## III.  RULE 23 CLASS CERTIFICATION REQUIREMENTS ARE MET FOR SETTLEMENT PURPOSES

### A.  The Class Of 116 Far Exceeds Numerosity Requirements

Numerosity is satisfied because the Class consists of 116 drivers.  *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982)(holding that 39 members is sufficient).

### B.  Common Questions of Fact and Law Exist Because Plaintiff And The Class Are Subject To Uniform, Class-Wide Policies That Create Shared Factual And Legal Issues

The "minimal" requirements of commonality are satisfied because this case contains an "existence of shared legal issues" and a "common core of salient facts," either of which is sufficient to establish commonality. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir.).  Here, all Class Members share a common core of salient facts in that all were subject to Defendant's grueling delivery schedules and time pressures.  Defendant's company-wide policies affected them all, and thus they share the following legal issues as well: (1) whether Defendant's uniform policy of scheduling exacting routes—all the while failing to affirmatively relieve them for 30-minute, off-duty meal breaks—impeded the Class from taking meal breaks compliant with Labor Code §512 and

identified Class Members) are subsequently identified or come forward and are shown to fall within the Class prior to the Final Approval Date, such individuals shall receive a pro-rata share of the NSC.

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

IWC Wage No. 7§11; (2) whether Defendant's uniform policy of scheduling overly-demanding routes that created significant time pressure on its drivers—all the while failing to relieve them of their duties—impeded the Class from taking timely rest breaks in accordance with Labor Code §226.7 and IWC Wage Order No. 7 §12; (3) whether Defendant's company-wide policy permitting unpaid rest periods violates Labor Code §226.7 and IWC Wage Order No. 7 §12(A); (4) whether Defendant's failure to compensate drivers for missed or untimely meal breaks with an extra hour of pay violates IWC Wage Order 7, §11 and Labor Code §512; (5) whether Defendant's failure to compensate drivers for missed, untimely or unpaid rest breaks with an extra hour of pay violates Labor Code §226.7 and Wage Order No. 7 §12; (6) whether Defendant's failure to keep accurate and contemporaneous meal break records violated Labor Code §226.7 and Section 7(a) of the Wage Order; (7) whether, by virtue of its failure to compensate the Class with premium pay for missed or untimely meal and rest periods, Defendant's issuance of paystubs that all incorrectly stated the wages due to the Class, violated Labor Code §§226, 226.3; and (8) whether Defendant's failure to compensate those members of the Class that are no longer in its employ with all wages due upon their termination violated Labor Code §203.

## C.  Plaintiff's Claims are Typical of those of the Class Because Plaintiff's Claims Are Reasonably Coextensive with those of the Class

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, typicality is satisfied because Plaintiff brings the same claims as the Class, with the exception of the §203 claim that applies only to those members of the Class that are no longer employed by Defendant.[15]  Nevertheless, all claims here at issue, including the §203 claim, arise from a common set of facts. As a driver, Plaintiff was subject to the same policies that give rise to the Class claims.

## D.  Plaintiff and Class Counsel Are Adequate Because They Have No Conflict Of Interests And Are Ready To Vigorously Prosecute This Action

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and

---

[15] Because only 16 Class Members are former drivers, Plaintiff's claims are "reasonably co-extensive" with those of the Class, even though he is currently employed by Martin-Brower. Ackermann Decl. ¶55.

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Courts interpret this to mean that (1) the proposed class representatives and their counsel do not have conflicts of interest with the class; and (2) the plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020.   Here, Plaintiff does not have interests adverse to those of the Class because he is a driver subject to the alleged policies and practices that gave rise to the Lawsuit. Where, as here, the claims of plaintiff and the class members are reasonably coextensive, there is no conflict. *General Tel Co. v. Falcon*, 457 U.S.147, 157-8, n. 13 (1982). Likewise, Class Counsel does not have interests antagonistic to the Class.[16]

Plaintiff is prepared to vigorously prosecute this action on behalf of the Class because he has thoroughly discussed the case with this Class Counsel and sufficiently understands the theories of the case. Moreover, Plaintiff is cognizant of the litigation process and fully understands the responsibilities inherent to his role as class representative. *Bartender Trust Fund v. La Vegas Sands, Inc,* 244 F.3d 1152, 1162 (9th Cir. 2001) (Stating with respect to plaintiff's adequacy: "The record indicates clearly that [Plaintiff] understands his duties and is currently willing and able to perform them. The Rule does not require more.").  Class Counsel is equally prepared to prosecute this action on behalf of Plaintiff and the Class. A&T and WCCE, both separately and jointly, have significant experience litigating meal and rest break class action lawsuits in federal and state courts.[17] Furthermore, Class Counsel has the financial resources necessary to vigorously litigate this matter.[18]

### E.     The Requirements of Rule 23(b)(3) Are Also Satisfied For Settlement Purposes

In order to certify a class under Rule 23(b)(3), plaintiffs must show that: (1) questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed.R.Civ.P. 23(b)(3).

The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).  For common questions of law and fact to predominate over individual

---

[16] Ackermann Decl., ¶¶ 6-8. Declaration of Melissa Harnett ("Harnett Decl."), ¶5, filed herewith.
[17] Ackermann Decl., ¶¶ 5-8, **Exhibits B** & **C**, thereto attached. Harnett Decl., ¶¶13-33.
[18] Ackermann Decl., ¶ 6.

questions "the issues in the class action that are subject to generalized proof ... [should] predominate over those…subject only to individualized proof." *Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361, 367(2009)(citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* 280 F.3d 124, 136).

When granting preliminary approval of a Rule 23 settlement, the Court should determine whether the proposed Class is a proper class for settlement purposes.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Man. For Complex Lit*, § 21.632.  In certifying a settlement class, however, the Court is not required to determine whether the action would be manageable if tried, "for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620; s*ee also* Fed. R. Civ. P. 23(b)(3)(D).  Here, the Class meets the requirements of Rule 23(b)(3).

### i. Predominance Is Met For Settlement Purposes As To Plaintiff's Claims Because They Arise From Defendant's Uniform Class-Wide Policies and Practices

The elements of a meal break claim can be discerned from the statute and the case law. An employer must (1) "clearly communicate the authorization and permission [to take the meal period] to its employees," *Bufil v. Dollar Financial Group* (2008) 162 Cal. App.4th 1193, 1999; and (2) "ensure that workers are actually relieved of all duty" for thirty minutes per day on or before the fifth hour of their shifts."[19] *Cicairos*, 133 Cal.App.4th at 962.  Under §226.7 of the Labor Code "if an employer fails to provide an employee a meal period…" in accordance with the applicable standard, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal…period is not provided." Cal. Labor Code §226.7. Nevertheless, employers are not liable under §226.7 if employees work less than six hour shifts and voluntarily elect not to take their first meal period. *See,* Labor Code § 512.

---

[19] There is uncertainty in the law regarding employers' burden under the second prong. While the courts in *Brinker Restaurant Corp. v. Superior Court*, 165 Cal.App.4th 25 (2008); *Brinkley v. Public Storage*, 167 Cal.App.4th 1278 (2008); and *Hernandez v. Chipotle Mexican Grill, Inc.* 2010 WL 3789012 (September 30, 2010), all held that that employers must only abstain from impeding employees from taking such breaks, the court in *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, held that employers must affirmatively relieve employees of duties for their meal breaks. The Supreme Court of California has granted review of *Brinker*, *Brinkley*, and *Hernandez* thus making them unciteable. *See* Cal. Rules of Court 8.1105(e) and 8.1115(a). Thus, the standard set forth in *Cicairos* is arguably the law in California, subject to change by the Supreme Court.

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

Here, a common nucleus of facts and issues predominates over individual ones for settlement purposes because Plaintiff's claims focus on Defendant's company-wide policies that applied uniformly to all members of the Class and consistently throughout the Class Period.  Specifically, Plaintiff can rely on common proof regarding whether:

1.  Plaintiff and the Class were subject to uniform and class-wide route scheduling practices and policies that consistently impeded them from taking timely, half-hour off-duty meal periods. *See Espinoza v. Domino's Pizza, LLC*, 2009 WL 882845 (C.D.Cal.2009).[20]

2.  Plaintiff and the Class were subject to uniform, class-wide time-keeping and compensation systems that were unable to properly keep track of—and therefore properly compensate—Plaintiff and the Class for missed or untimely meal breaks. *See Ortega v. J.B. Hunt Transport, Inc.* 258 F.R.D. 361;[21] *Bibo v. Federal Express, Inc., et al*, 2009 WL 1068880 (N.D.Cal.).[22]

3.  Defendant's rest break policy, which applied uniformly to Plaintiff and all members of the Class throughout the Class Period, violated California law on its face in that it provided for unpaid rest breaks.[23] *See Trujillo v. Winco Foods, LLC*, Case No. 622364, Cal. Superior Ct., County of Stanislaus (January 1, 2009).[24]

4.  To the extent that Defendant implemented company-wide policies that deprived Plaintiff and

---

[20] In *Espinoza,* the court certified a class of California delivery truck drivers as to its meal break claim because it determined, *inter alia*, that all "workers were subject to uniform policies and expectations." *Id.*, at *12.

[21] In *Ortega*, the court certified a class of California drivers as to its meal and rest break claims relying on the fact that "[d]efendant's compensation system, including the absence of codes to record breaks…and the absence of pay specifically allocated for break periods" applied to all potential class members. *Id.*, at *367.

[22] In *Bibo*, the court certified a class of drivers as to its meal break claim after it rejected the defendant's argument that common questions did not predominate. The defendant averred that its meal break policies were all in compliance with California law, all the while arguing that those same policies did not apply uniformly across all class members. The court rejected the defendant's position, reasoning that it could not, as it were, "have the cake and eat it too." *Id*. at *10.

[23] Under the IWC Wage Order 7 an employer is required to "authorize and permit" employees to take a 10-minute rest period for every four hours of work. *See* IWC Wage Order 7, §12(A). Notably, the Wage Order goes on to note that "authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." *Id.*(emphasis added).  Failure to provide an employee a rest period in accordance with the Wage Order requires an employer to pay the employee a "premium wage" comprised of one additional hour of pay for each day that the meal or rest period is not provided. *See* Cal. Labor Code § 226.7(b); *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094 (2007).

[24] In *Trujillo*, the Superior Court certified a class of over 144 California truck drivers as to their rest break claim after plaintiff, represented by Class Counsel in this case, showed that the policy was both unlawful on its face and applied uniformly to all members of the class.

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

Class Members of all the wages due to them for work actually performed (i.e. not including rest periods as paid time), Defendant also failed to issue correct itemized wage statements on a Class-wide basis throughout the Class Period.[25] *See Elliott v. Spherion Pac. Work, LLC*, 572 F.Supp.2d 1169, 1181 (C.D.Cal. 2008); *Cicairos v. Summit Logistics* (2005) 133 Cal.App.4th 949; and *Brewer v. Premier Golf Properties*, 168 Cal.App.4th 1243 (2008).

5.  To the extent that Defendant implemented company-wide policies that deprived the Class of all wages due to them for work actually performed it also failed to pay all wages due at termination to those members of the Class who are no longer employed by Defendant. *See Ortega v. J.B. Hunt Transport, Inc.* 258 F.R.D. 361; *Bibo v. Federal Express, Inc., et al*, 2009 WL 1068880 (N.D.Cal.).

6.  To the extent that Defendant implemented uniform policies violating the State's wage and hour laws, it also engaged in unfair competition.

> ### ii.  Superiority Is Satisfied For Settlement Purposes Because The Settlement of Claims As A Class Fosters Judicial Efficiency And Allows For Redress Of Small Individual Claims

Finally, Rule 23(b)(3)'s superiority requirement is satisfied here for settlement purposes because: (1) it would be highly inefficient for the 116 Martin-Brower drivers to file individual cases; (2) certification will provide the class with a method of obtaining redress for their relatively modest individual damages; and (3) public policy supports use of the class action device to enforce statutes that focus on the workplace. *See Hanlon,* 150 F.3d at 1023 (meritorious but small individual claims might not be brought at all); *Sav-on,* 34 Ca1.4[th] at 340 (sound public policy supports approving class certification; California "has a policy which encourages use of the class action device"; class actions avoid "repetitious litigation," and "provide[s] small Participants with a method of obtaining redress"); accord, *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 461-2.

As with the California state cases, federal courts in California have held that it is more efficient to adjudicate wage and hour lawsuits as class actions, rather than as a series of individual cases.  *See Wiegle v. FedEx Ground Package Sys, Inc*., 2008 W.L. 410691, *11 (S.D.Cal. 2008)

---

[25] Under §226 every employer shall furnish each of his or her employees an accurate statement showing, *inter alia*: (1) gross wages earned, (2) total hours worked by the employee, (3) all deductions, and (4) all applicable hourly rates in effect during the pay period and the corresponding number of the hours worked at each hourly rate. Defendant has argued, *inter alia*, that any violations of §226 were not willful.

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

("Courts often certify class actions when employer wage and hour practices similarly impact a large number of workers); *Wang*, 231 F.R.D. at 614 ("courts have not hesitated to certify wage and hour claims simply because California law provides for administrative relief'); *Tierno v. Rite Aid Corp*, 2006 WL 2535056,*12 (N.D.Cal 2006) (potential loss of access to courts supports argument for class certification). Adjudicating these claims through this Settlement avoids duplicative litigation of uniform questions of fact and law and minimizes expense.

## IV.    THE PROPOSED SETTLEMENT MERITS APPROVAL

Rule 23(e) states that a court may approve a class action settlement only if it finds the settlement fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(A). The process by which the court makes this determination involves two steps: (1) there must be preliminary approval of the proposed settlement and of the Notice to be sent to class members, and (2) there must be a fairness hearing at which class members may be heard regarding the settlement and at which other evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is considered.

In connection with the first stage of the process, courts have determined that preliminary approval of the settlement and notice is appropriate if the proposed settlement: (1) falls within the range of possible approval, (2) appears to be the product of serious, informed and non-collusive negotiations; and (3) has no obvious deficiencies such as granting preferential treatment to segments of the class, granting unduly preferential treatment to the class representatives or awarding unreasonable attorneys' fees. *See Man. For Complex Lit* (3d. ed.) §30:41; *Newberg on Class Actions*, (4th ed. 2002) §§11:24-5; *In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D.Cal.2007), *Vasquez v. Coast Valley Roofing, Inc.*("Vasquez"), 670 F.Supp.2d 1114.

### A.    The Settlement Agreement Is Within The Range Of Possible Approval

To evaluate the "range of possible approval" criterion, which focuses on "substantive fairness and adequacy," courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer. *In re Tableware Antitrust Litig.,* 484 F.Supp.2d at 1080. If the settlement confers substantial benefit, while proceeding with litigation would impose significant risks, then the settlement falls within the range of approval. *Vasquez*, at* 1125.

This matter is apt for preliminary approval because Plaintiff and Class Counsel secured a

favorable result even though they faced significant potential obstacles. As stated above, Class Counsel and Plaintiff secured a very favorable result averaging over $4,000 per Class Member.[26] Moreover, the agreement secured by Plaintiff and Class Counsel automatically disburses payment to Class Members, unless they opt-out. In avoiding an intervening step, Plaintiff and Class Counsel have increased the probability that Class Members will receive the payment due to them. Additionally, the settlement here is non-reversionary, in the sense that any of the funds associated with Class Members who opt-out or who do not cash their settlement checks will be donated to a worthy charitable cause. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114.[27]

Furthermore, pursuing the Lawsuit through trial would impose significant risks on the outcome of Plaintiff's claims. First, Defendant has asserted FAAAA and LMRA preemption defenses that present risks to Plaintiff's claims in light of the fact that Defendant's victory on either of these two arguments would be dispositive of all claims. Second, briefing a motion for class certification and subsequently trying a class action case carry with them inherent risks, expenses and delays, including the risks of non-certification or decertification. In that regard, Defendant has presented approximately 21 Class Members' declarations supporting its theory of the case and version of the facts. Third, subsequent appellate proceedings, if any, would entail additional risks, expenses and delays. Compounding the matter is the fact that California law pertaining to the meal break claim will remain unsettled until the California Supreme Court decides *Brinker*.[28]

Finally, numerous courts have given preliminary and final approval to settlements conferring

---

[26] The amount is calculated as follows: $479,250 (NSC) ÷ 116 (Members) = $4131.46/Member. The maximum amount a Class Member can be awarded—i.e., because he or she worked throughout the entire Class Period—is approximately $5,315.32. This amount is calculated as follows: 4 QWDs/Week  x 49 Weeks/Year  x 4.7 Years in Class Period = 921.2 QWDs per FTE in Class Period. 921.2  x 90.6 FTEs = 83,460.7 maximum QWDs for entire Class. $479,250 NSC funds ÷ 83,460.7 QWDs = $5.74 per QWD. 921.2 maximum number of QWDs per individual during Class Period x $5.74/QWD = $5,289.73.

[27] In *Vasquez* the court preliminarily approved a claims-made settlement releasing defendant from its liability for alleged meal period violations in exchange for paying each of its 150 class members an average of $1,000. *Id.* The terms here secured by Plaintiff and Class Counsel are more favorable because the average recovery is more than $4000 and the process is not claims-made, but opt-out only.

[28] *See*, fn. 36, *supra*. In concluding that settlement was within the range of approval, the court in *Vasquez* expressly relied on the fact that California's meal break law would be in flux until the California Supreme Court decides *Brinker* as a reason for approving the settlement. The court also noted that Defendant contested liability and would vigorously contest Plaintiffs' claims at trial, and that even if Plaintiffs won at trial, the appeals process would likely be lengthy and expensive. *Id.* at *1126.

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

similar benefits[29] to drivers in missed meal break cases handled by Class Counsel. *See e.g., Reynoso v. Stock Building,* USDC Case No. CV 08-2578 (CD.Cal. 2008) (Final approval granted on settlement conferring each member of 250-driver meal break class $19.80 per week worked, claims made); *Jape, et al. v. Southern Wine & Spirits*, USDC Case No. CV 09-2599 (CD.Cal. 2009) (final approval granted on settlement conferring $15.00 per week worked to each of member of a 301-driver class meal break class, claims made); and *Bond, et al. v. Ferguson Enterprises*, USDC Case No. CV 09-0166 (ED. Cal. 2009) (preliminary approval granted to a 548-member meal break class where each driver received $21 per week worked, claims made).[30] Accordingly, the Settlement Agreement falls within the range of possible approval.

**B.     The Settlement Is The Product of Serious, Informed & Non-Collusive Bargaining**

The Settlement Agreement is the product of an intensive and adversarial informal discovery process and mediation between the parties.[31] Both parties are represented by independent counsel who have considerable experience in litigating complex wage and hour class actions.[32] Counsel for both parties conducted significant informal discovery and undertook thorough legal and factual analyses in the months leading up to mediation.[33] Accordingly, the briefs submitted by both parties for the purposes of mediation were fully developed and rooted in the facts underlying this Lawsuit.

The parties attended mediation with an impartial mediator who assisted the parties in obtaining a compromise. As stated above, Barry Goldstein, one of the nation's most skilled employment class action attorneys, who assisted with negotiations for the Class, concurs that the Settlement Agreement is fair. Furthermore, Plaintiff and a representative of Defendant, along with defense counsel, were present at mediation, and all were well-informed of the factual and legal questions at the heart of the case. After a full day of negotiation, the parties reached an agreement, which is memorialized as the Settlement Agreement.

Also as elucidated above, the Settlement Agreement recognizes and reflects the inherent

---

[29] This Settlement Agreement will confer upon each Participant approximately $22.96 per one week of 4 Qualified Workdays. *See* fn. 49, *supra*.
[30] Ackermann Decl. ¶8, **Exhibit C**, attached thereto.
[31] *Id*. ¶¶19-36.
[32] *Id*. ¶ 5-8; Harnett Decl. ¶ 13, et seq.
[33] See Section II, supra.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PRELIMINARY APPROVAL

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

expense, delay, and uncertainty that briefing a motion for class certification and eventually conducting trial would necessarily entail. Both parties also recognize that opting to try the case could raise lengthy and costly disputes on appeals. For these reasons, Class Counsel submits that the Settlement Agreement is in the best interests of all involved.

### C.   The Settlement Agreement Contains No Obvious Deficiencies

#### i.   The Settlement Agreement Does Not Grant Preferential Treatment To Segments of the Class

Under the terms of the Settlement Agreement, after costs, fees and the Enhancement Award have been paid, each Participant will receive a proportionate share of the NSC based on the number of Qualified Work Days performed as a driver during the Class Period. This methodology was adopted to reduce potential inequities between Participants and to optimize the claim amount for each Participant. Because each Participant's share of the $479,250 NSC funds is based on a formula that includes the QWDs specific to each member, no segment of the Class is given undue preferential treatment at the expense of others. Thus, the Settlement Agreement contains a rational distribution mechanism and avoids any improper, preferential treatment to any part of the Class.

#### ii.   The Settlement Agreement Does Not Grant Preferential Treatment To The Class Representative

Likewise, the Enhancement Award contemplated by the Settlement Agreement, if approved by this Court, would not constitute undue preferential treatment in favor of Plaintiff. In order to determine the propriety of enhancement awards, a district court should consider the actions protecting class interests, the benefit provided to the class based on those actions, and the amount of time and effort expended by the plaintiff. *Staton v. Boeing Co.*, 327 F.3d 938, 976-7 (9th Cir. 1993).

In the case at bar, Plaintiff provided significant assistance to Class Counsel during this case. Specifically, Paul Wood undertook lengthy interviews; provided a written declaration; produced relevant documents; prepared and evaluated the case for mediation; attended the full-day mediation session; and carefully considered, evaluated and approved the terms of the Settlement Agreement on behalf of the Class. These efforts were instrumental in securing the favorable terms of the Settlement Agreement, which will provide monetary compensation to a Class of 116 current and former employees of Defendant. Moreover, Plaintiff faced the significant risk of an adverse fee and cost

**ACKERMANN & TILAJEF, P.C.**
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

award since Labor Code §218.5 grants two-way attorneys' fees to the prevailing party.[34] In light of these efforts and significant risks of attorneys' fees and retaliation, the proposed Enhancement Award of $12,000 to Plaintiff is reasonable and justifies preliminary approval.

### iii.  The Attorneys' Fees Under the Settlement Agreement Are Reasonable

The proposed attorneys' fees should preliminarily be approved by this Court because they are reasonable and fair.  In cases that involve common funds, such as the one currently at issue, a court has discretion to award attorneys' fees as a percentage of the settlement. *See Paul, Johnson, et al. v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The court may consider: (1) whether counsel obtained excellent results for its client, (2) the risk involved in the representation, and (3) fees awarded in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2003). As a cross-check, the court may examine Class Counsel's lodestar. *Id.* at 1047.

Here, Class Counsel achieved an excellent result for the Class. Class Counsel secured an agreement whose TSS is approximately 25% of the revised maximum value for the Covered Claims and entitles Participants to awards averaging approximately $4,000 and a maximum amount of approximately $5,289.73. These results are consistent with numerous cases litigated by Class Counsel and preliminarily approved by other federal and state courts in California. *See, e.g., Reynoso*, Case No. CV 08-2578 (C.D. Cal.); *Jape*, Case No. CV 09-2599 (C.D. Cal.); and *Padilla et al, Case* No. CV09-8730 (C.D. Cal.).[35] Moreover, Class Counsel secured this beneficial agreement in spite of the risks inherent to litigating meal break class actions.[36]

Furthermore, awarding attorneys' fees in the amount of 25% of the TSS is consistent with the Ninth Circuit's clearly established benchmark.[37] *See In Re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); *Satchell, et al. v. Fedex* 2007 WL 2343904 (N.D.Cal. 2007); and *Ross, et al. v. U.S. Bank Nat. Ass'n.*, 2010 WL 3833922 (N.D.Cal. 2010).

---

[34] Plaintiff is also generally releasing all claims, thereby providing a more robust release than that of the Class. *See* Ackermann Decl. ¶ 2, and **Exhibit A**, attached hereto.

[35] *Id.* **Exhibit C.**

[36] Plaintiff's retainer agreement with Class Counsel also stipulates to attorneys' fees of up to 30% of the TSS.

[37] In 'common fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method. *Hanlon*, 150 F.3d at, 1029.

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

V.     **APPROVAL OF CLASS NOTICE AND RELATED FORMS**

A.     **Administration of Notice and Objections**

The parties agree to reach consensus on a Claims Administrator prior to the hearing on this Motion.  Within fifteen (15) business days of preliminary approval of the Settlement Agreement, Defendant will provide the Claims Administrator with the names, last known addresses, social security numbers, dates of employment and QWDs worked during the Class Period for each Class Member.  Within twenty-eight calendar (28) days of preliminary approval, Claims Administrator will mail all Class Members the Class Notice.[38] Class Members may challenge and the number of QWDs they worked during the Class Period, with all challenges to be decided by the Administrator based on Defendant's records and Class Members' documentary evidence.[39]

Class Notices shall be deemed received by the Class Members to whom they were sent seven (7) days after mailing. If Notice is returned to the Claims Administrator by the United States Postal Service ("USPS") with a forwarding address, then the Claims Administrator shall re-mail the Notice to the forwarding address and the Notice shall be deemed received on the date of the re-mailing. If the USPS returns a Notice because the address is no-longer valid, the Claims Administrator will try to ascertain the correct address. If the correct address is obtained, the Claims Administrator shall re-mail within five (5) days of ascertaining the address. If no other address is obtained, then the Claims Administrator shall re-mail the Notice to the last known address.

Class Members must request exclusion only in writing, by mail and postmarked within thirty (30) days of the Notice mailing. The notice informs each Class Member of his or her right to object to the settlement.  Class Members who wish to object to the Settlement must object in writing, stating the basis for the objection, file the objection with the Settlement Administrator and the parties' counsel and be postmarked no later than thirty (30) days after the Notice mailing. Otherwise, Class Members shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

---

[38] Attached respectively as Exhibit 2 to the Settlement Agreement.
[39] Ackermann Decl. ¶39.

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

**B.     The Court Should Direct Distribution of the Notice of Settlement**

This Court should order distribution of the proposed Class Notice in the manner described in the Settlement Agreement.  Federal Rule of Civil Procedure 23(e)(1)(B) requires the Court to direct notice to class members "in a reasonable manner."  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Notice by mail provides adequate "individual notice to all members."  *Id.*  Where the names and addresses of the class members are ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'"  *Id.* at 175.  If notice by mail is ordered and addresses are available, as here, publication of notice is not necessary and is, in fact, "duplicative and serve[s] no purpose."  *U.S. v. Truckee-Carson Irrigation Dist.*, 71 F.R.D. 10, 18 (D. Nev. 1975).

Here, the Class Members' names and last known addresses are known or ascertainable.  The Class Members are former or current employees of Defendant, whose names, last known addresses, and social security numbers Defendant maintains in its personnel files.  Although some class members' addresses may have changed, their social security numbers have not.  Per the Settlement Agreement, the Administrator will use social security information to locate any class member whose Notice is returned as undeliverable through a skip trace.  The proposed Class Notice fairly and accurately summarizes the terms of the Settlement Agreement and the Class Members' rights (including procedures for requesting exclusion from or objecting to the Settlement Agreement).  Under these circumstances, Plaintiff submits that notice by mail is sufficient to comply with the requirements of Rule 23 and due process, and that notice as proposed should be approved.

**C.     The Proposed Class Notice and Opt-out Process Are Appropriate**

Rule 23(c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: (1) The nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and 6) the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. Rule 23(c)(2)(B).

The content of the proposed Class Notice fully complies with due process Rule. 23.  The

ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

Class Notice provides specifics regarding the date, time, and place of the Final Approval Hearing, and informs Class Members that they may enter an appearance through counsel.  The Notice informs Class Members how to exercise their rights and make informed decisions regarding the proposed Settlement Agreement, and tells them that if they do not opt out, the judgment will be binding upon them.  The Notice informs the Class about the application of Class Counsel for reimbursement of costs and attorneys' fees from the TSS, as well as the amount sought.  The Class Notice describes the terms of the Settlement Agreement, informs Class Members how individual recoveries will be determined, and provides an estimated settlement amount for each Class Member. The detailed information in the proposed Notice is more than adequate to put class members on notice of the Settlement Agreement.  *See Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338 (9th Cir. 1980).

**D.      The Court Should Set A Final Approval Hearing**

Finally, this Court should set a hearing for final approval of the Settlement Agreement to be scheduled no earlier than 30 days after the notice mailing, i.e., the earliest date by which Class Members must file objections, if any.  To allow sufficient time to complete the notice dissemination process, review any objections and prepare responses, and for the parties to prepare papers supporting final approval, Plaintiff proposes that the Court set the final approval hearing on or after June 17, 2011, and allow the parties to file any papers for the hearing fourteen (14) days before the hearing. These dates allow a reasonable period for mailed notice and for class members to submit claims, object to or opt-out of the settlement, but would not unduly delay the receipt of settlement awards.

**VI.      CONCLUSION**

For the reasons discussed above, Plaintiff requests that the Court enter an order of preliminary approval of the Settlement Agreement, approve the form of the proposed notice, and approve the proposed schedule, including setting a date for a final approval hearing.

1    Dated:  March 4, 2011

2

3                                                    Respectfully submitted,
                                                     Ackermann & Tilajef, P.C.
4

5                                                    By:  _____
                                                          Craig Ackermann, Esq.
6                                                         Pablo Orozco, Esq.

7                                                    Wasserman, Comden,
                                                     Casselman & Esensten, L.L.P.
8

9                                                    By:  _____
                                                          Melissa Harnett, Esq.
10

11                                                   Attorneys for Plaintiff and the Class

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ACKERMANN & TILAJEF, P.C.
11180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035

3:10-cv-03289-SI

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PRELIMINARY APPROVAL
23